GOOD HOPE INDUSTRIES, INC. & others[1] *vs.* RYDER SCOTT
COMPANY.

Hampden. January 4, 1979. — May 4, 1979.

Present: QUIRICO, BRAUCHER, KAPLAN, WILKINS, & LIACOS, JJ.

*Jurisdiction*, Nonresident, Long arm statute.

The contacts with Massachusetts of the defendant in an action
brought here, consisting of sending periodic appraisal reports to the
plaintiff's office in Massachusetts over the course of one year, fre-
quent initiation of telephone communications with the plaintiff in
Massachusetts, mailing monthly invoices to the plaintiff in Massa-
chusetts over a period of seventeen months and regularly accepting
payment by checks drawn from the plaintiff's Massachusetts bank
account, were sufficient to confer on a Massachusetts court person-
al jurisdiction over the defendant under § 3 (a) of G. L. c. 223A, the
long arm statute. [5-7]

CIVIL ACTION commenced in the Superior Court on Sep-
tember 14, 1976.

A motion to dismiss was heard by *Greaney*, J.

The Supreme Judicial Court granted a request for di-
rect appellate review.

---

[1] Good Hope Refineries, Inc., Good Hope Chemicals, Inc., Southern
Pipeline Corporation, and Southern Gas Transmission Company.

*Donald R. Ware* (*Christian M. Hoffman* with him) for the plaintiffs.

*George W. McLaughlin, Jr., & William Shields, III*, for the defendant.

LIACOS, J. The plaintiffs filed a civil complaint in the Superior Court for Hampden County against the defendant, a Texas corporation. The defendant filed a motion to dismiss for lack of personal jurisdiction, pursuant to Mass. R. Civ. P. 12(b)(2), 365 Mass. 754 (1974). Thereafter, the parties engaged in discovery limited to the jurisdictional issue, and filed affidavits, depositions, and exhibits prior to argument on the motion. After a hearing, the judge allowed the motion and judgment was entered dismissing the action. The plaintiffs appealed, arguing that subsections (*a*), (*b*), (*c*), and (*d*) of G. L. c. 223A, § 3,[2] each confers long arm jurisdiction over the defendant. This court allowed the plaintiffs' application for direct appellate review. Because we think the defendant is susceptible to personal jurisdiction under G. L. c. 223A, § 3 (*a*), we reverse.[3]

Generally speaking, "inquiries into whether the exercise of personal jurisdiction is permissible in a particular case are sensitive to the facts of each case." *Great W. United Corp.* v. *Kidwell*, 577 F.2d 1256, 1266 (5th Cir. 1978). See *Droukas* v. *Divers Training Academy, Inc.*, 375

---

[2] The pertinent portion of G. L. c. 223A, § 3, as amended by St. 1969, c. 623, is as follows: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (*a*) transacting any business in this commonwealth; (*b*) contracting to supply services or things in this commonwealth; (*c*) causing tortious injury by an act or omission in this commonwealth; (*d*) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenues from goods used or consumed or services rendered in this commonwealth . . . ."

[3] Since a finding of personal jurisdiction under any one of the subsections of § 3 is sufficient to warrant reversal of the judgment, we need not consider whether jurisdiction might also be conferred by virtue of § 3 (*b*), (*c*), or (*d*).

Mass. 149, 156-157 (1978); *Kulko* v. *Superior Court,* 436 U.S. 84, 92 (1978). Facing a motion to dismiss under Mass. R. Civ. P. 12(b)(2), the plaintiffs bear the burden of establishing sufficient facts on which to predicate jurisdiction over the defendant. *Droukas, supra* at 151. Compare *Walsh* v. *National Seating Co.,* 411 F. Supp. 564, 567 (D. Mass. 1976).

The facts set forth by the parties in the pleadings, supporting affidavits, depositions, and exhibits are essentially as follows. The plaintiff Good Hope Industries, Inc. (Industries), is a Massachusetts corporation with its main office in Springfield. John R. Stanley owns all the stock of Industries. The additional plaintiffs, Good Hope Refineries, Inc. (Refineries), Good Hope Chemicals, Inc., Southern Pipeline Corporation and Southern Gas Transmission Company are wholly owned subsidiaries of Industries, and, while they are Texas corporations, their principal offices are in Springfield, Massachusetts. Stanley, the chief executive officer of all five corporations, is the controlling force behind them, with Industries functioning as the primary vehicle for control. The principal bank account of each plaintiff is located in Massachusetts. The defendant Ryder Scott Company (Ryder) is a Texas corporation which represents itself as providing "total reservoir engineering and geological services to the petroleum and natural gas industries on a worldwide basis." Specifically, Ryder holds itself out as being able to produce studies and appraisals of natural gas reserves, which appraisals are said to be "accepted by major financial institutions and investors" for loan eligibility evaluation and other purposes.

Early in 1974, Refineries engaged the services of Ryder to appraise the extent and value of natural gas in certain leasehold interests which it owned in Texas. The genesis of the contract was as follows. Stanley, representing Refineries, was in New Orleans discussing potential financing with a Louisiana bank officer. He requested the names of firms specializing in valuation of oil and gas

properties and whose reports the bank would accept as the basis for making loans, and was introduced by the bank officer over the telephone to Ryder's president, Raymond V. Cruce. During that initial conversation, Cruce was informed that Stanley's main office was in Springfield. Shortly thereafter, Stanley met with Cruce at the Ryder offices in Houston. Cruce made representations as to the extent of Ryder's services to companies throughout the United States and the world, and as to Ryder's credibility with major lending institutions. At this meeting Stanley and Cruce orally agreed that Refineries would supply Ryder the necessary raw data, which Ryder would analyze for the purpose of preparing periodic appraisal reports indicating the extent and value of the natural gas. The information was to be used both to assist Refineries[4] in formulating a development plan and in obtaining the financing required to implement the plan.[5]

Ryder specifically agreed to send the appraisal reports to Refineries in Springfield, Massachusetts. It sent at least nine such reports to Springfield over a period of about one year.[6] The substance of the appraisal reports was discussed in meetings between Stanley and Ryder personnel in Houston, and in frequent telephone communications. According to its records, Ryder initiated at least fifty-two telephone calls to Good Hope personnel in Springfield from October, 1974, through September, 1975. Ryder also sent monthly invoices for its services to Refineries in Springfield. A total of seventeen such invoices were received in Springfield, from April, 1974, through August, 1975. The bills were paid from a Refineries checking account in a Massachusetts bank.[7]

---

[4] Ryder was also informed that each of the plaintiffs would participate in the planned development of the leasehold interests.

[5] Principally, Refineries sought to ascertain whether its natural gas holdings were of sufficient magnitude to justify the construction of an ammonia plant for which the natural gas would be used as feedstock.

[6] Ryder also sent periodic appraisal reports to financial institutions designated by Stanley.

[7] The total amount charged by Ryder Scott for its services during this period was approximately $69,000.

The initial appraisal reports sent by Ryder to Refineries indicated that Refineries' natural gas reserves were substantial.[8] Acting in reliance thereon, the plaintiffs, operating from Springfield, obtained loans and commitments for additional funds from financial institutions and began building the ammonia processing plant in Texas.[9] Subsequently, Ryder sent Refineries revised appraisals reflecting a significantly decreased valuation of Refineries' natural gas holdings.[10] In light of the revised valuation, major banking commitments to the plaintiffs were withdrawn. The plaintiffs terminated construction of the plant, lost their investment, and became liable to contractors and vendors for breaches of contracts entered into in connection with the plant construction. Some of these contractors and vendors are located in Massachusetts.[11]

Generally, a claim of personal jurisdiction over a non-resident defendant presents a two-fold inquiry: (1) is the assertion of jurisdiction authorized by statute, and (2) if authorized, is the exercise of jurisdiction under State law

---

[8] A report dated February 24, 1975, stated that the present discounted value of the natural gas was $219,688,336.

[9] According to their complaint, the plaintiffs "(a) borrowed $35,000,-000 and secured a $100,000,000 banking commitment with conditions dependant [sic] upon the accuracy and reliability of said appraisal reports, and (b) committed themselves to and proceeded to expend funds in furtherance of construction of said ammonia plant at a projected cost to plaintiffs that would exceed $145,000,000 after completion of construction."

[10] The July, 1975, report represented that the present, discounted value of the gas was only $94,064,435.

[11] In their complaint, the plaintiffs allege that the defendant appraised and valued the natural gas in a careless, negligent, and reckless manner, made careless, negligent, and reckless misrepresentations to the plaintiffs in the appraisal reports, and breached the contractual and fiduciary duties it owed to, and warranties it had made to, the plaintiffs. They allege damages of not less than $100,000,-000 on account of the defendant's wrongful actions.

consistent with basic due process requirements mandated by the United States Constitution? Jurisdiction is permissible only when both questions draw affirmative responses. Since we have stated that our long arm statute, G. L. c. 223A, functions as "an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States," *"Automatic" Sprinkler Corp. of America* v. *Seneca Foods Corp.*, 361 Mass. 441, 443 (1972), the two questions tend to converge. General Laws c. 223A, § 3, cannot authorize jurisdiction which is constitutionally unacceptable, even though the fact pattern asserted in support of jurisdiction apparently satisfies the statute's literal requirements. Likewise, G. L. c. 223A, § 3, asserts jurisdiction over the person to the constitutional limit only when some basis for jurisdiction enumerated in the statute has been established. Although presented with jurisdictional facts sufficient to survive due process scrutiny, a judge would be required to decline to exercise jurisdiction if the plaintiff was unable to satisfy at least one of the statutory prerequisites. Having examined the facts before us, we are satisfied that c. 223A, § 3 (*a*), within its literal and constitutional boundaries, confers jurisdiction in this case.

General Laws c. 223A, § 3 (*a*), gives rise to jurisdiction if the defendant either directly or through an agent transacted any business in the Commonwealth, and if the alleged cause of action arose from such transaction of business. The factual constellation here—including the defendant's sending periodic appraisal reports to Refineries in Massachusetts over the course of one year, its frequent initiation of telephone communications with Refineries in Massachusetts, its mailing monthly invoices to Refineries in Massachusetts over a period of seventeen months and regularly accepting payment by checks drawn from Refineries' Massachusetts bank account—points to the conclusion that the defendant "transact[ed] . . . business" in Massachusetts, within the literal meaning of those words. Further, the cause of action al-

leged obviously has arisen, at least in part, by virtue of that transaction of business in Massachusetts. The literal requirements of G. L. c. 223A, § 3 (*a*), are satisfied. Our discussion now focuses on reasons why the assertion of jurisdiction in these circumstances also comports with the statute's implicit constitutional constraints.

A recent statement of the relevant constitutional considerations, as gleaned from the leading United States Supreme Court cases on the subject, is as follows: "The governing principle is the fairness of subjecting a defendant to suit in a distant forum. Only if the nonresident defendant has such 'minimum contacts' with the state 'that the maintenance of the suit does not offend "traditional notions of fair play and justice," ' *International Shoe Co.* v. *Washington*, 326 U.S. 310 (1945), or if the defendant has performed some act 'by which [it] purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,' *Hanson* v. *Denckla*, 357 U.S. 235 (1958); *McGee* v. *International Life Insurance Co.*, 355 U.S. 220 (1957), may the forum, consistently with due process, extend its long arm to embrace it." *Great W. United Corp.* v. *Kidwell*, 577 F.2d 1256, 1266 (5th Cir. 1978), quoting from *Jetco Elec. Indus., Inc.* v. *Gardiner*, 473 F.2d 1228, 1234 (5th Cir. 1973). For the purpose of our examination here, these considerations coalesce around the following inquiry: whether there was some minimum contact with the Commonwealth which resulted from an affirmative, intentional act of the defendant, such that it is fair and reasonable to require the defendant to come into the State to defend the action. See *Product Promotions, Inc.* v. *Cousteau*, 495 F.2d 483 (5th Cir. 1974).[12]

---

[12] A number of Federal courts have formulated a number of guidelines for the constitutional analysis of jurisdictional questions, each taking into account essentially the same factors. See, e.g., *Aftanase* v. *Economy Baler Co.*, 343 F.2d 187, 197 (8th Cir. 1965); *In-Flight Devices Corp.* v. *Van Dusen Air, Inc.*, 466 F.2d 220, 226 (6th Cir. 1972); *Whittaker Corp.* v. *United Aircraft Corp.*, 482 F.2d 1079, 1083 (1st Cir. 1973).

At the outset, we distinguish those prior Massachusetts cases in which the court deemed the defendants' contacts with Massachusetts to be insufficient to ground jurisdiction under G. L. c. 223A, § 3 (a). In *"Automatic" Sprinkler*, the defendant's only contact with the Commonwealth was its mailing of a purchase order and a check in partial payment to the plaintiff's division in Worcester, and its receipt of a letter and an invoice mailed from that location. Affirming the lower court's denial of jurisdiction, we characterized the defendant's activity as having little impact on commerce in Massachusetts, and concluded that the defendant did not "purposefully . . . [avail] itself of the privilege of conducting activities within the forum State." *"Automatic" Sprinkler*, 361 Mass. at 446, quoting from *Hanson* v. *Denckla, supra* at 253. We reached a like result in *Droukas*, where the defendant's only contacts with Massachusetts were the placement of an advertisement in a publication distributed in the Commonwealth, the receipt in Florida of a telephone call from the plaintiff in Massachusetts in regard to the purchase of two marine engines, the sending of correspondence to the plaintiff confirming the sale, and the shipment of the engines "collect" to the plaintiff in Massachusetts. We viewed this "isolated transaction" as an inadequate basis for the assertion of jurisdiction. *Droukas*, 375 Mass. at 154.[13]

Finally, in *Nichols Assocs.* v. *Starr*, 4 Mass. App. Ct. 93 (1976), the Appeals Court found jurisdiction over a Connecticut resident to be lacking. The lower court judge in the case before us relied heavily on *Nichols* in granting the defendant's motion to dismiss. The plaintiff in *Nichols*, a surveying firm, brought suit in Massachusetts against the defendant, a land developer, seeking recovery

[13] In both these cases, while the defendants might be viewed literally as having "transact[ed] . . . business" in Massachusetts, their contacts with the Commonwealth were constitutionally insufficient to support jurisdiction under G. L. c. 223A, § 3 (a).

for the value of services rendered. The Appeals Court discovered only two contacts with Massachusetts for the purpose of the jurisdictional question: (1) the performance of a portion of the work by the plaintiff at its Holyoke office, absent any evidence that it was within the contemplation of the parties that the plaintiff would perform any of the work in Massachusetts, and (2) the defendant's dispatch of an employee to Holyoke to pick up plans required for the Connecticut project on those "rare occasions" when the plaintiff did not have a messenger available.[14] On the record before it, [15] the court held that the defendant was not "transacting any business" in Massachusetts within the meaning of G. L. c. 223A, § 3 (a).

The facts before us present significantly greater justification for the exercise of jurisdiction under G. L. c. 223A, § 3 (a), than those alleged in "*Automatic*" *Sprinkler*, *Droukas*, or *Nichols*. The defendant here had not participated in an isolated transaction without commercial consequences in Massachusetts. Rather, it had engaged in an enterprise of substantial dimension and duration with a party whose business headquarters, along with those of its parent and sister companies (which companies shared involvement in the transaction with the defendant) were known to be in Massachusetts. For more than a year, the defendant maintained close contact with

[14] It is significant in *Nichols Assocs.* v. *Starr*, 4 Mass. App. Ct. 93 (1976), that the *plaintiff* had performed services for the nonresident defendant. The attachment of jurisdiction over the defendant might well have implied that under § 3 (a) all *purchasers* could be rendered subject to long arm jurisdiction. So broad an interpretation would have promoted the unwanted result of discouraging foreign purchasers from dealing with resident sellers for fear of having to engage in litigation in distant courts. See *Whittaker Corp.* v. *United Aircraft Corp.*, 482 F.2d 1079, 1085 (1st Cir. 1973).

[15] It should be noted that while the defendant filed an affidavit and exhibits to support its motion to dismiss, the plaintiff in *Nichols* filed no counter affidavit or other form of opposition. As a result, the question of personal jurisdiction was determined by the Appeals Court solely on the basis of the undisputed factual assertions included in the materials submitted by the defendant.

the plaintiffs in Massachusetts, initiating more than fifty telephone calls. Pursuant to contract, it mailed periodic appraisal reports to Massachusetts, the contents of which it knew would be relied on by the plaintiffs in their formulation of major business undertakings. Over a period of seventeen months, it billed Refineries in Massachusetts, and accepted payment therefrom.

Opposing the assertion of jurisdiction under § 3 (a), the defendant argues that the contacts here resulted not from its voluntary association with the forum, but entirely from the unilateral activity of the plaintiffs. We cannot agree that by exercising jurisdiction in this case the Commonwealth would drag into its courts an "unsuspecting and unwilling" defendant, in violation of the *Hanson* requirement.[16] See *In-Flight Devices Corp.* v. *Van Dusen Air, Inc.*, 466 F.2d 220, 226 (6th Cir. 1972). The defendant knowingly and purposefully engaged in transactions with the plaintiffs in Massachusetts. Its actual physical presence here was not required as a basis for jurisdiction.[17]

---

[16] The requirement that there be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State" was not met in *Hanson* v. *Denckla*, 357 U.S. 235, 253 (1958). In *Hanson*, a trust had been established in Delaware by a Pennsylvania-domiciled settlor who later moved to Florida. The settlor performed various small acts of trust administration in Florida; she eventually died there. Since the defendant trustee had done no act in Florida relating to the trust agreement's validity (the subject of the suit), jurisdiction in that forum was found wanting. Similarly, in *Kulko* v. *Superior Court*, 436 U.S. 84, 88-89 (1978), the Supreme Court rejected an effort by a California court to assert personal jurisdiction over a nonresident solely because "by consenting to his children's living in California [with his former wife], appellant had 'caused an effect in th[e] state' warranting the exercise of jurisdiction over him." The affirmative, purposeful acts of the defendant here with respect to the forum State far exceed those of the defendants in both these cases.

[17] As part of their argument in support of the exercise of jurisdiction under § 3 (a), the plaintiffs in their brief refer to additional contacts made by the defendant with Massachusetts. Although these contacts did not give rise to the cause of action before us, and so have not been considered in determining whether the defendant was "transacting any business" under § 3 (a), they are noteworthy as indicative of the

See *Pedi Bares, Inc.* v. *P & C Food Mkts., Inc.*, 567 F.2d 933, 937 (10th Cir. 1977); *In-Flight Devices Corp.* v. *Van Dusen Air, Inc.*, 466 F.2d at 234-235. See also *McGee* v. *International Life Ins. Co.*, 355 U.S. 220 (1957). "Modern technology has taken us far beyond the point where two men must stand in each other's physical presence to transact business. Widespread use of the telephone and the mails make[s] actual physical presence unnecessary in many cases." *McGraw* v. *Matthaei*, 340 F. Supp. 162, 164 (E.D. Mich. 1972). Similarly nondispositive is the fact that the plaintiffs made the initial solicitations with respect to these transactions. See *Pedi Bares, Inc.* v. *P & C Food Mkts., Inc., supra.*

What is significant, on the other hand, is that the defendant's contacts with the forum were deliberate and not fortuitous, such that "the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable, if not foreseen, rather than a surprise." *Product Promotions, Inc.* v. *Cousteau*, 495 F.2d at 496. We think that by sending appraisal reports and by initiating numerous telephone calls to the plaintiffs at their headquarters in Massachusetts, the defendant undertook purposeful activity in the forum. It reasonably could have foreseen that significant managerial decisions, based on

defendant's intention to involve itself in Massachusetts commerce. For example, in 1974 the president of the defendant company personally visited two major financial institutions and an insurance company in Boston in order to solicit business. In addition, also in 1974, Massachusetts Mutual Life Insurance Company (Mass. Mutual), located in Springfield, referred an oil company to the defendant in connection with long-term financing which the oil company sought from Mass. Mutual. The oil company engaged the defendant, which thereafter sent appraisal reports to Mass. Mutual. Apparently, the defendant also performed some minor services directly for The First National Bank of Boston. Finally, the defendant during the pertinent period placed monthly advertisements in the professional publication, Journal of Petroleum Technology, circulated in Massachusetts. We view these contacts as supportive of the plaintiffs' contention that the defendant generally sought to engage in business activity in Massachusetts, and reasonably ought to be expected to defend itself here.

the information it had provided, would be made in Massachusetts. Had the defendant not desired to expose itself to a claim of Massachusetts jurisdiction, it was within its power to refuse to deal with the plaintiffs here. See *Vencedor Mfg. Co.* v. *Gougler Indus., Inc.*, 557 F.2d 886, 891 (1st Cir. 1977); *Powder Horn Nursery, Inc.* v. *Soil & Plant Laboratory, Inc.*, 20 Ariz. App. 517 (1973). The result we reach is not altered by the defendant's assertion that the oral agreement was entered into in Texas between two Texas corporations with respect to gas leasehold interests in Texas. As the court pointed out in *Gardner Eng'r Corp.* v. *Page Eng'r Corp.*, 484 F.2d 27, 31 (8th Cir. 1973): "[I]t is immaterial that the contract in question may have had significant connections with states other than the forum state. Plaintiff is not required to choose the forum with the most significant contacts as a matter of jurisdiction . . . ." See *Product Promotions*, *supra* at 495-496.

In these circumstances, we think the exercise of personal jurisdiction over the defendant would be neither so unfair nor so unreasonable as to result in a denial of due process. Massachusetts has a legitimate interest in providing a forum for the suit, considering that each of the plaintiffs is headquartered here,[18] and that the plaintiff Industries, the principal vehicle for controlling the other plaintiff corporations, is a Massachusetts corporation. While we recognize that the defendant may be inconvenienced by litigation in this Commonwealth, we cannot say that the degree of hardship imposed would rise to the level of constitutional violation.

---

[18] We note that although the defendant's affidavit indicates none of the four plaintiff subsidiary corporations of Industries was registered to do business in Massachusetts when the complaint was filed, each of them had so registered before the judge ruled on the defendant's motion to dismiss. These four plaintiffs were, therefore, eligible to maintain this action against the defendant in the courts of the Commonwealth. See G. L. c. 181, §§ 3, 4, and 9. See also *National Fertilizer Co.* v. *Fall River Five Cents Sav. Bank*, 196 Mass. 458 (1907). Cf. *Goodwin Bros. Leasing, Inc.* v. *Nousis*, 373 Mass. 169 (1977).

We wish to make clear, however, that we do not reach the merits of a motion to dismiss on the basis of forum non conveniens, pursuant to G. L. c. 223A, § 5,[19] as that question is not properly before us.[20] We find only that G. L. c. 223A, § 3 (a), with its implicit constitutional boundaries, confers jurisdiction over the defendant in this case.

The judgment ordering the action dismissed is reversed, and the case is remanded for proceedings consistent with this opinion.

*So ordered.*

---

[19] General Laws c. 223A, § 5, inserted by St. 1968, c. 760, states: "When the court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any conditions that may be just."

[20] The judge in his memorandum of decision on the defendant's motion to dismiss considered G. L. c. 223A, § 5, although he recognized that it was not technically raised by the defendant. Should the defendant assert § 5 as a basis for dismissal in the further proceedings incident to this lawsuit, we suggest that discovery, and submission to the court of materials pertinent to the issues raised by such a motion, would be in order.