**Ellen J. AUB, Plaintiff**

v.

**TECHNICOLOR ENTERTAINMENT SERVICES, Defendant.**

No. CIV.A. 02–10373–GAO.

United States District Court,
D. Massachusetts.

Oct. 10, 2002.

Juliane Balliro, Perkins, Smith & Cohen, Boston, MA, for Ellen J. Aub, Plaintiff.

John A. Shope, Foley Hoag LLP, Boston, MA, for Technicolor Entertainment Services, Defendant.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

The plaintiff, Ellen J. Aub, has brought this suit against Technicolor Entertainment Services ("Technicolor") alleging that Technicolor failed to pay her an adequate "success" fee after she facilitated an advertising deal between Technicolor and Loews Cineplex Entertainment ("Loews"). Technicolor now moves to dismiss this action for lack of personal jurisdiction. For the reasons detailed below, Technicolor's motion is granted.

### A. Summary of Facts

Aub is a self-employed consultant in the entertainment industry with an expertise in marketing. She currently is a resident of Massachusetts and her business office is in her Massachusetts home. At all relevant times she also maintained a home in California.

Technicolor is a Delaware corporation headquartered in California. It maintains no office or telephone listing in Massachusetts, it has no customers based in Massachusetts, nor does it regularly solicit customers in Massachusetts.

In April 1999, Aub, then residing in California, was introduced to David Elliot, the president of Technicolor, at a dinner event held in California. During this first informal meeting, Elliot and Aub discussed the topic of on-screen advertising in the motion picture industry, and Elliot asked Aub numerous questions about her work and her expertise. Aub avers that during this conversation she mentioned that she would be relocating to Massachusetts shortly. Aub in fact moved to Massachusetts in May 1999.

In October 1999, Aub met Elliot again, this time at an industry convention held in Atlantic City, New Jersey. During this second informal meeting, Elliot invited Aub to meet with him the next time she was in California. Sometime thereafter, Aub called Elliot and arranged a meeting. In November, the two met twice in California to discuss what services Aub might be able to provide for Technicolor, particularly in the area of on-screen advertising. During the meetings Elliot asked Aub to send him a written proposal setting forth her compensation requirements for her consulting services. On November 26, Aub, who was then back in Massachusetts, sent Elliot a letter containing her proposal, and during a subsequent series of phone calls, Elliot assured her that they would work out the details regarding a success fee going forward.

In reliance upon the representations Elliot had made, Aub then called the executive vice president of Loews to discuss a potential deal with Technicolor to place on-

screen advertising on cinema screens owned and operated by Loews. As the negotiations between Technicolor and Loews progressed, Technicolor called Aub in Massachusetts on several occasions to discuss the Loews deal. In the spring of 2000, Aub learned that Technicolor had entered into a written contract with Loews pursuant to which Technicolor would sell filmed rolling stock advertising to be shown prior to feature presentations at Loews theaters.

While Aub was assisting Technicolor with its deal, Technicolor paid her hourly consulting fees in accordance with the terms Aub had set forth in her November 1999 letter. Technicolor sent all these payments to Aub's Massachusetts address. When Aub contacted Technicolor regarding her success fee, the parties were unable to agree on an acceptable sum. Technicolor ultimately mailed Aub a check for $10,000, and on December 29, 2000, Aub sent Technicolor a letter reserving her rights to pursue additional compensation from Technicolor for her services.

### B. *Discussion*

■ Technicolor asserts that this case should be dismissed because the Massachusetts long-arm statute does not provide a basis for the exercise of personal jurisdiction over it in this forum. *See Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 204 (1st Cir.1994). Aub counters that this Court does have personal jurisdiction over Technicolor because this case arises out of Technicolor's "transacting ... business" in Massachusetts. *See* Mass. Gen. Laws ch. 223A, § 3(a). The question

therefore is whether the interactions between Aub and Technicolor amount to Technicolor having "transact[ed] any business" in the Commonwealth.

■ The personal jurisdiction analysis is specific to the facts presented. Under section 3(a) of the Massachusetts long-arm statute, the inquiry requires the court to focus on the quality as well as the quantity of the nonresident's contacts with Massachusetts. The First Circuit has noted that the " 'transacting [any] business' test under section 3(a) is designed to identify deliberate, as distinguished from fortuitous, contacts with the forum by the nonresident party." *Lyle Richards Int'l, Ltd. v. Ashworth, Inc.,* 132 F.3d 111, 112 (1st Cir.1997). The long-arm statute does not confer personal jurisdiction where the nonresident's contacts with Massachusetts were "purely incidental" to the business transactions. *Id.* at 113. Similarly, the Massachusetts Supreme Judicial Court ("SJC") has distinguished cases in which a nonresident's contacts are "random or isolated events" from cases in which the contacts are "part of a larger systematic effort on [the nonresident's] part to obtain business from Massachusetts businesses and residents." *Tatro v. Manor Care, Inc.,* 416 Mass. 763, 625 N.E.2d 549, 552 (1994).[1]

■ It can also be important to distinguish between nonresident buyers of goods or services from Massachusetts providers, on the one hand, and nonresident sellers of goods and services to Massachusetts purchasers, on the other. When a nonresident party simply purchases goods or services from Massachusetts residents,

1. The focus on the quality of the contacts comes in part from the fact that the Massachusetts courts have used the federal constitutional requirement of limits on personal jurisdiction as a lens through which to interpret the scope of the long-arm statute. The SJC has explained that the long-arm statute "can-

not authorize jurisdiction which is constitutionally unacceptable, even though the fact pattern asserted in support of jurisdiction apparently satisfies the statute's literal requirements." *Good Hope Indus.,* 389 N.E.2d at 79–80.

Massachusetts courts are somewhat less inclined to find that the party is subject to personal jurisdiction here. The SJC has noted more than once that section 3(a) should not be interpreted to confer jurisdiction over all purchasers of Massachusetts products and services because such a broad application could produce "the unwanted result of discouraging foreign purchasers from dealing with resident sellers for fear of having to engage in litigation in distant courts." *Good Hope Indus., Inc. v. Ryder Scott Co.,* 378 Mass. 1, 389 N.E.2d 76, 81 n. 14 (1979). *See also New Hampshire Ins. Guar. Ass'n. v. Markem Corp.,* 424 Mass. 344, 676 N.E.2d 809, 812 (1997) ("Potential buyers would be discouraged from dealing with our suppliers" if section 3(a) were interpreted as broadly as argued by the plaintiff.). In contrast, a seller who seeks out purchasers in Massachusetts and to that end actively advertises its goods or services to Massachusetts residents is more likely to be found to have engaged in the sort of deliberate contacts with the Commonwealth that qualify as the transaction of business within Massachusetts for purposes of the long-arm statute. *See Markem Corp.,* 676 N.E.2d at 813.

Technicolor's contacts with Massachusetts are too fortuitous and incidental to fall within the reach of the Massachusetts long-arm statute. The business relationship grew out of the contact originally made in California when Aub was a resident of that state. None of Technicolor's executives ever traveled to Massachusetts, and all of Aub's face-to-face meetings with Technicolor executives took place elsewhere. The only reason Technicolor ever had any contacts with Massachusetts was because Aub chose to move her consulting business from California to Massachusetts.

Moreover, Technicolor's reasons for hiring Aub as its consultant had nothing to do with her location in Massachusetts. Her services were not localized to Massachusetts, and it was of no consequence to Technicolor that Aub performed any of her work on Technicolor's behalf in this Commonwealth. Rather, it appears that she was hired because of her experience in the entertainment business generally, wherever conducted, and in particular because of her ability to make a connection between Technicolor and Loews, a New York-based company. The fact that there were long-distance communications between the parties by mail and telephone is not enough to justify the conclusion that Technicolor transacted business *in* Massachusetts.

## C. *Conclusion*

The Massachusetts long-arm statute does not confer personal jurisdiction over Technicolor for this action. Technicolor's motion to dismiss is GRANTED. The complaint is DISMISSED.

It is SO ORDERED.