Welch, Richard E., J.
INTRODUCTION
Imagine a first-year law school Civil Procedure examination with the following question: “Could an employee of state X who happens to live in neighboring state Y, sue state X in state Ys courts? Assume that the lawsuit solely concerns her employment contract and working conditions in state X. Further, assume that the employee occasionally performed some work for state X when at home in state Y.” The overwhelming majority of law students would breathe a sigh of relief while thanking the law school gods for an easy question. Then, citing hoary old Supreme Court precedents like International Shoe and spouting constitutional phrases like “due process” and “sovereignty,” the students would answer that the employee could not drag her state employer into another state’s courts. Instead, the employee would have to litigate the matter where the employment contract arose and where the alleged illegal acts occurred, i.e., state X. The professor would award a high grade for this correct answer. At the risk of ruining any suspense, the same result applies in this real life dispute.
But first some background.
BACKGROUND
The plaintiffs in this action include the former Chief Forensic Investigator for the State of New Hampshire, Katherine Wieder, who was employed by the Office of the Chief Medical Examiner for the State of New Hampshire and under the immediate supervision of the Chief Medical Examiner, defendant Thomas A. Andrew, M.D. In addition to her duties as Chief Forensic Investigator, Ms. Wieder also served as an Assistant Deputy Medical Examiner for the State of New Hampshire. In this capacity she was given additional sums of money as a contractor and worked at the direction and supervision of the Chief Medical Examiner. As an Assistant Deputy Medical Examiner, Ms. WiedCr was compensated for death investigations. These investigations required Ms. Wieder to externally examine the body prior to cremation. She was paid for each pre-cremation examination she allegedly attended plus compensation for mileage. Pre-cremation examinations require that a certificate be issued and signed by the Assistant Deputy Medical Examiner pursuant to New Hampshire Revised Statutes 325-A-.18. The certificate certified that no further examination or judicial inquiry was necessary prior to cremation.
In her capacity as an Assistant Deputy Medical Examiner, Ms. Wieder ran into trouble in 2004. A criminal investigation by the State of New Hampshire examined allegations that Ms. Wieder had authorized numerous cremations and signed certificates without viewing the bodies in violation of New Hampshire law. Complaint, Exhibit 21. Ms. Wieder allegedly failed to file many of the certificates that she had signed in violation of New Hampshire law and also allegedly gave pre-signed certificates to crematoria which allowed her to give verbal authorization over the telephone to release a body for cremation without the required viewing by Ms. Wieder of the body. This criminal investigation resulted in a search warrant being obtained and a search conducted at Ms. Wieder’s home in Newburyport, Massachusetts. See Complaint ¶119 and Exhibit 21 to the complaint. Eventually, Ms. Wieder was indicted on numerous counts of fraudulent handling of recordable writing, falsifying physical evidence, criminal solicitation, and other charges. On July 3, 2008, Katherine Wieder pled guilty to many of these felony counts. See Motion to Withdraw (Docket #15).
The complaint in this case was filed approximately seven months before Ms. Wieder’s guilty plea. The wellspring of the civil complaint fairly can be summarized as resting upon the allegation that the criminal investigation by the State of New Hampshire was malicious, baseless, wrongful, and in retaliation for the plaintiff asserting various constitutional rights. See, e.g., Complaint SNI3, 6, 54, 55, 56, 66, 89, 100, 109, 120, 130, 133, 165.
The husband of Ms. Wieder, Stephen J. Wieder, M.D., is also named as a plaintiff as is his psychiatric practice located in Newburyport, Massachusetts, Wie-der Psychiatric Services. Dr. Stephen Wieder also serves as the guardian and next friend of Katherine Wieder due to her physical incapacity or illness. Complaint, Exhibit 22.
The civil complaint filed in this case (by predecessor counsel) completely ignores Rule 8 of the Rules of Civil Procedure. Far from being a “short and plain statement of the claim,” the complaint rambles in a convoluted, confusing, and, at times, nearly incomprehensible manner. Generously reading the *134 complaint, there exist two groups of defendants. The first group consists of offices or officials of the State of New Hampshire, namely the New Hampshire Chief Medical Examiners Office and Thomas A. Andrew “in his official and individual as Chief Medical Examiner for the State of New Hampshire.” The other group of defendants can be termed “hospital” defendants. These include the Concord Hospital, Inc., its parent corporation, Regional Health Care corporation, its president and C.E.O., Michael B. Green, and the vice-president of the finance for the hospital, defendant Scott Sloan. The complaint also lists ten “unknown and known by not named defendants.”
The Office of the Chief Medical Examiner is part of the Office of the Attorney General, a statewide division of the State of New Hampshire. As Chief Medical Examiner, defendant Thomas A. Andrew, M.D., runs the New Hampshire Chief Medical Examiner’s Office. The complaint, which seeks a large amount of monetary damages, sues Dr. Andrew in his “official and individual capacity.” As made clear in the allegations in the complaint, it is only his actions as the Chief Medical Examiner of the State of New Hampshire that are at issue. Defendants Concord Hospital, Inc. and Capital Region Health Care Corporation are private corporations, incorporated under the laws of the State of New Hampshire. Concord Hospital is located in Concord, New Hampshire. The State of New Hampshire leases space in Concord Hospital (from its parent company, defendant Capital Region Health Care Corporation) for the State Morgue. The morgue is under the control of the Office of the Chief Medical Examiner. Dr. Thomas Andrew is not an employee of either of the two private corporations. He is affiliated with Concord Hospital to the extent that he may practice at the Concord Hospital and often serves as consultant to other physicians with privileges at the Concord Hospital. See Exhibit 15 to the Complaint. The remaining individual defendants, Michael Green (in his official capacity as President of the Hospital) and Scott Sloan (in his official and individual capacity as Vice President of Finance for Capital Region Health Care Corporation) are sued solely in connection with their employment at the either the hospital or the parent corporation.
Both sets of defendants have moved to dismiss all counts of the complaint against them.
The defendants primarily argue a lack of jurisdiction (citing Rule 12b(2)) within the Commonwealth of Massachusetts.[1] For the reasons set forth below, these motions plainly must be granted.
THE COMPLAINT
The numerous counts of the complaint are difficult to understand, never mind summarize. In order to fairly evaluate the jurisdiction arguments, one is forced to slog thorough the complaint and give it a generous interpretation. The fairest reading of Count 1 (asserted against the State defendants and Concord Hospital) is that Dr. Andrew breached some unspecified “fiduciary duty to act in good faith” and “serve the best interests of former employee K. Wieder.”[2] Dr. Andrew allegedly breached this “duty” by requiring Ms. Wieder to perform work assignments at Concord Hospital that were not her responsibility. These work assignments related to the “hospital morgue” and allege that Ms. Wieder was required to perform these job functions “without pay.” Dr. Andrew allegedly also wrongfully sought to “marshall evidence” and encouraged the criminal investigation into “K. Wieder’s affairs for alleged mishandling of corpses and allegedly failing to manage and fill out required record forms prior to approving corpses for cremation.”
Count 2 alleges a breach of contract and wrongful discharge of Ms. Wieder (brought against the State defendants and hospital defendants Michael Green and Scott Sloan). Dr. Andrew allegedly forced Ms. Wieder to work as a “morgue attendant/consultant for defendant Concord Hospital” (and also Chief Forensic Investigator and Assistant Deputy Medical Examiner) against her will and allegedly without pay. The count goes on to claim that these defendants wrongfully suspended Ms. Wieder from her employment and engaged in actions which constituted a “constructive discharge” and wrongful termination.
Count 3 is brought against the two corporate hospital defendants and alleges that “K. Wieder was wrongfully indicted for allegedly engaging in criminal activities” (this is the criminal activity to which she later pled guilty) and further alleges that the defendant corporations were “unjustly enriched” when Ms. Wie-der lost unpaid pension benefits, health insurance benefits and retirement benefits (apparently from her “wrongful discharge”). Count 4 is brought against Concord Hospital for alleged failure to pay Ms. Wieder wages for work she performed at the hospital. Count 5 claims a breach of contract against the New Hampshire Chief Medical Examiner’s Office for wrongfully terminating Ms. Wieder from her state employment.
Count 6 alleges a -violation of Section 11 of Massachusetts General Laws Chapter 93A. In this count, it is alleged that the hospital defendant corporations engaged in unfair and deceptive acts and practices in connection with their dealings with Ms. Wieder which allegedly brought harm to plaintiff Stephen Wieder’s Psychiatric Services. This appears to stem from the allegations that the criminal investigation involved “intentionally invading their home offices and raiding their personal and confidential business records.” This is in reference to the search warrant identified in the complaint as part of the criminal investigation. Complaint ¶6. There is no indication that the results of the search were ever suppressed.
Count 7 is brought against the hospital corporate defendants and hospital defendant Scott Sloan for “negligent accounting and misrepresentation.” It alleges unjust enrichment. Allegedly Concord Hospital *135 knew that Ms. Wieder “performed assorted duties within the morgue and other locations and even cleaning the morgue per directives of Thomas Andrew.” 1125. The count claims that the hospital defendants did not compensate Ms. Wieder for these acts and that, as a result, she suffered severe emotional distress and permanent injury. Generously read, this count alleges that the hospital defendants knew that Ms. Wieder was being overworked and underpaid at the morgue and/or hospital. As a result of this overwork at the hospital and Ms. Wieder’s physical aliments, she allegedly was unable to physically meet her job obligations. This, the count alleges, led to her being criminally indicted.
Count 8 is brought against all the defendants and seeks declaratory judgment for the alleged failure to compensate Ms. Wieder for her work at the Concord Hospital and her allegedly wrongful termination. In this count, they also seek a declaration that Ms. Wieder’s operation of a home office in Newburyport, Massachusetts was “in furtherance of the New Hampshire Chief Medical Examiner’s Office.” 11350. Thus, the argument goes, this prayer for relief provides personal jurisdiction over the New Hampshire Chief Medical Examiner’s Office in Essex County Massachusetts. See also 17A.
In Count 9, Ms. Wieder brings a claim pursuant to Section 1983 (42 U.S.C. §1983) claiming that the New Hampshire Chief Medical Examiner’s Office violated her first amendment rights.[3] She claims that she was harassed by other employees and officials of the medical examiner’s office and forced to work without pay at the morgue. She also claims that she, despite her disability, was forced to park her vehicle far away from her place of employment in Concord, New Hampshire and “walk up the hill in inclement weather.” 1138. When she allegedly reported these incidents, the Medical Examiner’s Office “retaliated against her for engaging in protected speech.” She claims monetary and punitive damages in excess of two million dollars.
Count 10 also is a Section 1983 claim. This claim is brought against all the defendants.[4] Again she claims she was forced to park her vehicle far away from her place of employment (i.e. the morgue at the Concord Hospital) and as a result of this she expressed a view “advocating for the rights of physically disabled persons.” She claims, as a result of this, she was misclassified in her employment without a hearing. Thus, this count claims a “violation of procedural due process and equal protection rights.”
Count 11 again is brought against all defendants pursuant to Section 1983. In this count, the plaintiffs claim that Ms. Wieder’s constitutional rights under “the equal protection clause and due process clause of the 14th Amendment” were violated when her reputation was harmed in connection with the grand jury investigation which led to the criminal charges discussed previously. In addition, she claims that she was uncompensated, or underpaid, or her job was “misclassified.”
Count 12 claims a loss of consortium on behalf of plaintiff Stephen Wieder.
Count 13 brings an intentional infliction of emotional distress claim by all the plaintiffs against all the defendants. It claims that Ms. Wieder was forced to work “over fourteen years without being compensated and causing her to be wrongfully indicted.” The plaintiffs claim that the defendants committed fraud by not paying her a salary “for work she performed in the Concord Hospital." 1164 (emphasis added).
Count 14 claims punitive damages relating to all of the above mentioned actions. This count is brought by all the plaintiffs against all of the defendants.
The Complaint includes additional information relevant to this motion. In approximately 1990, plaintiff Katherine Wieder was employed by the State of New Hampshire. At the time, her name was Katherine Descheneaux. She was a resident of Nashua, New Hampshire. Complaint, Exhibit 10. Apparently at some later date, Ms. Descheneaux’s name changed (one assumes due to marriage) to Katherine Wieder and apparently she moved to Newburyport, Massachusetts. She allegedly had a “home office” at her Massachusetts residence and she claims she “was allowed to work from her home office,” 145, 46. She claims that she was overworked — "required to work continuously day and night with only 5 to 6 hours off," 140 — and made ill by the work. Apparently she used her “home office” for her work at night or while ill. Due to the state criminal investigation, the Attorney General’s Office for the State of New Hampshire (the department to which the Office of the Chief Medical Examiner reports) suspended Ms. Wieder from her jobs as Chief Forensic Investigator and Assistant Deputy Medical Examiner. The suspension was with pay. It occurred on October 4, 2004. Complaint, Exhibit 1. On January 21, 2005, Ms. Wieder sent a letter to the New Hampshire Office of the Attorney General resigning her positions as Chief Forensic Investigator and Assistant Deputy Medical Examiner. Complaint, Exhibit 4.
DISCUSSION
At oral argument and in their reply brief, the state defendants argued that this court could not exercise jurisdiction over either the Chief Medical Examiner’s Office or the Chief Medical Examiner due to the State of New Hampshire’s sovereign immunity. Counsel argued that this jurisdictional bar was contained within the Eleventh Amendment of the United States Constitution. This argument is not convincing. The history and wording of the Eleventh Amendment makes it clear that the constitutional provision is solely a limitation upon federal court jurisdiction. While it is true that the Eleventh Amendment has been interpreted in an expansive fashion, sometimes in disregard of its *136 actual language, the amendment traditionally has been considered not to be applicable to state courts. Thus, in such cases as Nevada v. Hall, 440 U.S. 410, 416 (1979), the United State Supreme Court held that the State of Nevada could be sued in a California state court. Jurisdiction in that case was based on the fact that a Nevada state employee was driving a Nevada state-owned vehicle while on Nevada state business within the boundaries of California. The fact that Nevada law prohibited or limited state liability in similar lawsuits did not preclude the California state lawsuit. The Constitution’s Full Faith and Credit clause does not prevent a forum state from applying its own laws and supporting its own policies.[5]
The Supreme Court decision of Alden v. Maine, 527 U.S. 706, 738 (1999), may represent a more expansive interpretation of the Eleventh Amendment. In Alden, the United States Supreme Court held that State of Maine (due to state sovereignty which is apparently assumed within the constitution and represented, in part, by the Tenth and Eleventh Amendments) prohibited the State of Maine being sued for damages in Maine state courts. The Alden case, however, did not purport to overrule such cases as Nevada v. Hall Alden may best be viewed as a narrow decision relating to the ability to name a state as a defendant in a suit for monetary damages in that state’s own court system. This case does not present that situation.
Although the United States Constitution does not prohibit someone suing the State of New Hampshire in the state courts of the Commonwealth of Massachusetts, federalism concerns still exist. One must interpret the Massachusetts longarm jurisdictional statute with these concerns in mind. For example, it would be indeed surprising if one state (or a department of that state) could be hauled into another state’s courts simply because a New Hampshire state employee alleged that she had been performing some work function while at home in Massachusetts. From a federalism point of view, it would be rather startling if this judge, an employee of the Commonwealth of Massachusetts, could sue the Commonwealth in the State of Idaho relating to some employment dispute simply because I made some work-related phone calls or wrote an opinion while on vacation at my Idaho cabin. At heart, what must be shown to exert jurisdiction over a branch of state government or a state official sued in his capacity as a state official, is that the state purposefully authorized the conducting of business within the other state and gained some advantage thereby.
The longarm jurisdictional statute of Massachusetts G.L.c. 223A, §3, requires the same result. See Good Hope Industries, Inc. V. Ryder Scott Co., 378 Mass. 1, 5-8 (1979). Nowhere in the Complaint is there an allegation, never mind substantiated proof, that the Chief Medical Examiner’s Office for the State of New Hampshire was conducting business in the State of Massachusetts. Nowhere is there any allegation that the Chief Medical Examiner, defendant Thomas Andrew, traveled to or conducted any business in Massachusetts. The complaint does allege that plaintiff Katherine Wieder conducted some sort of business in her capacity as Chief Forensic Investigator or Assistant Deputy Medical Examiner from her “home office” in Newburyport, Massachusetts. This allegation, by itself, is not sufficient to constitute a state “transacting any business in the Commonwealth” for purposes of §3(a). The plaintiffs do not point to any evidence showing that the State of New Hampshire authorized Katherine Wieder to work at home or in some way operated a satellite state office out of her residence. Given the allegations of the complaint, it is not the State of New Hampshire which was tiying to conduct business within the Commonwealth but rather its employee Katherine Wieder who allegedly was trying to conduct the business of the State of New Hampshire from her residence in Massachusetts.
The same can be said for the hospital defendants. There is no indication whatsoever that Concord Hospital, its officers, or its parent corporation conducted any business in Massachusetts. See Affidavits of Michael Green and Scott Sloane (containing unrebutted assertions that the hospital and its parent corporation do not conduct business in Massachusetts). The plaintiffs do make the unsupported allegation that the Concord Hospital employs residents of Massachusetts and that certain of its patients are Massachusetts residents. Whether this is true or not makes little difference. The complaint, as it relates to the hospital defendants, is solely focused on the fact that Katherine Wieder was allegedly mistreated while working at Concord Hospital in Concord, New Hampshire. See Fern v. Immergut, 55 Mass. App. 577, 582 (2002) (“relatedness requirement [requires] . . . action must directly arise out of the specific contacts between the defendant and the forum state”). The complaint’s many allegations do not include any alleged activity of Concord Hospital within the confines of the Commonwealth of Massachusetts. Nor is there any showing, for purposes of §3(d) of the longarm statute, that any tortious injury that occurred to Katherine Wieder or her husband within the Commonwealth, created any jurisdiction. In other words, there is no showing that the State of New Hampshire or any of the hospital defendants “regularly does or solicits business” within the Commonwealth or “derives substantial revenues from goods used or consumed or services rendered” in Massachusetts.
The plaintiffs also argue that at least a small portion of their complaint falls within §3(c) of Massachusetts longarm statute. This provision provides jurisdiction if a defendant causes tortious injury within the Commonwealth. The plaintiffs claim that the searching of their residence, in connection with a “search warrant issued as part of the criminal investigation” caused tortious injury. There is no doubt that the search took *137 place in Massachusetts. The plaintiffs claim that the search was part of a “wrongful” or “malicious” criminal investigation. The problem with this argument is plaintiff Katherine Wieder’s subsequent voluntary plea of guilty to the charges which resulted from the criminal investigation. Having pled guilty to the criminal acts uncovered by the criminal investigation, plaintiff Katherine Wieder cannot now complain that the criminal investigation or the search was some how wrongful or malicious. In any event, the proper forum for such allegations would have been within the State of New Hampshire.
Any fair reading of the complaint shows that all the allegedly wrongful actions took place within the State of New Hampshire. For example, Katherine Wieder was allegedly overworked at the state morgue located in Concord, New Hampshire. She allegedly had an employment contract with Concord Hospital and performed services at the hospital in Concord, New Hampshire. She allegedly was mistreated at the morgue at Concord Hospital in Concord, New Hampshire and the defendants did not provide an adequate parking space in that city. The State of New Hampshire allegedly misclassified her employment status as an employee for the State of New Hampshire. The Concord Hospital and the State of New Hampshire allegedly did not pay her for work that she performed within the confines of New Hampshire as an “employee” of the Concord Hospital or as the Chief Forensic Investigator for the State of New Hampshire or as an Associate Medical Examiner for the State of New Hampshire. These services she allegedly performed without payment included “cleaning the morgue in Concord, New Hampshire and going to various sites in New Hampshire where there were dead bodies.” The entire flavor of the complaint relates to the State of New Hampshire. It is only the plaintiffs’ residence that has any relationship to the Commonwealth of Massachusetts. This does not provide jurisdiction under the United States Constitution or the Massachusetts longarm statute.
CONCLUSION
For the reasons set forth above, the complaint must be dismissed pursuant to Rule 12(b)(2) for lack of jurisdiction.
So Ordered,

 The defendants also moved to dismiss the complaint on the ground that the numerous counts do not state a claim. Rule 12(b)(6). Although these arguments appear meritorious, this court need not rule on these grounds. To the extent that the ruling is based on exhibits to the complaint and/or affidavits, it might be considered a motion for summary judgment on jurisdictional grounds.

 How a fiduciary duty arises from an employment contract is, at best, unclear. For the purpose of this motion, however, what is relevant is where the alleged unfair acts occurred, i.e., New Hampshire.

 It is very unclear how this and similar §1983 counts state a claim. The counts seek monetary damages against a state wide office or against a state official sued in his official capacity. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 66, 71 (1989).

 How the hospital defendants are “acting under the color of state law” for purposes of Section 1983 is unclear.

 Nevada v. Hall holds that a forum state’s interest in compensating its residents for tortious injury supersedes another state’s contrary laws. Such tort suits “could hardly interfere with Nevada’s capacity to fulfill its own sovereign responsibilities.” 440 U.S. at 424, n.24. The same could be said in this case. Thus, the Eleventh Amendment (or the Full Faith and Credit Clause) is not a bar to this lawsuit.