Sanders, Janet L., J.
Crane & Co., Inc. (Crane) brought this action against the defendants, Gregory R. Jordan (Jordan) and Ad Lucem Corporation (Ad Lucem), claiming that the defendants misappropriated Crane’s trade secrets and confidential information after Jordan left his job at Crane in June 2013. Crane’s Amended Complaint contains seven counts: breach of a confidentiality agreement (Count I), misappropriation of Crane’s confidential information and trade secrets under common law (Count II), misappropriation of Crane’s confidential information and trade secrets under G.L.c. 93, §§42, 42A and O.C.G.A. §§10-1-762, 10-1-763 (Counts III and IV), conversion (CountV), unjust enrichment (Count VI), and violation of G.L.c. 93A, §§2, 11 (Count VII). The case is now before this Court on the defendants’ motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(2) and Mass.R.Civ.P. 12(b)(3). The defendants move to dismiss all counts of the Amended Complaint for lack of personal jurisdiction and forum non conveniens. After careful review of the materials submitted by the parties, this Court concludes that the defendants’ motion must be Denied.
BACKGROUND
For purposes of this motion, this Court takes as true the factual allegations in the Amended Complaint. Because the motions raise an issue of personal jurisdiction, the parties have also submitted affidavits with exhibits. The facts contained in those submissions are important to resolution of the motion before the Court and, together with the Complaint’s allegations, can be summarized as follows.
Crane is a Massachusetts corporation with a principal place of business in Boston, Massachusetts. It is an integrated manufacturer and supplier of currency paper, printed banknotes, and security technologies. Crane develops, among other things, paper-based counterfeit deterrents, such as advanced security threads, watermarks, and moire-type magnification systems. Jordan is a life-long resident of Georgia. Ad Lucem is a Georgia corporation with a principal place of business in Georgia. Jordan is Ad Lucem’s only employee and holds the roles of Chief Executive Officer, Chief Financial Officer, Secretary, and registered agent of the company.
In April 2004, Nanoventions, Inc. (Nanoventions), a Delaware corporation based in Georgia, hired Jordan as a senior project engineer. At Nanoventions, Jordan was responsible for researching and developing new micro-optic technologies that are involved in various anti-counterfeiting products. In connection with his hiring, Jordan signed a Personnel Confidentiality and Non-Solicitation Agreement (the Confidentiality Agreement) that required him to keep confidential all information that became known to him as a result of his employment with Nanoventions and prohibited him from disclosing or otherwise using such information outside of his employment. He also agreed to assign to Nanoventions all title, interests, and rights, including intellectual property rights, in any inventions made by him or with others during the course of his employment. Jordan worked at Nanoventions for the next four years.
On September 26,2008, Nanoventions entered into an Assignment and Assumption Agreement with Visual Physics, LLC (Visual Physics), a Crane subsidiary based in Georgia. The Assignment Agreement explicitly included Jordan’s Confidentiality Agreement. The Assignment and Assumption Agreement was part of a three-way corporate transaction whereby Crane, through another wholly owned subsidiary, Crane *552 Micro-Optic Solutions, LLC (CMOS), purchased all of the outstanding equity interests in Visual Physics. Thus, CMOS, through Visual Physics, acquired the right to enforce the Confidentiality Agreement Jordan had signed with Nanoventions.
On April 11, 2011, Jordan signed an acknowledgment confirming that he had received and read the CMOS Employee Handbook. The Handbook included a provision that stated: “Employees should be aware that CMOS retains legal ownership of the product of their work. No work product created while employed by CMOS can be claimed, construed, or presented as an employee’s property, even after employment by CMOS has been terminated or the relevant project completed.” For the next four and half years, Jordan worked as an employee of CMOS. In May 2013, as a result of a corporate reorganization, employees of CMOS became direct employees of Crane. Jordan terminated his employment with Crane on June 3, 2013, receiving his last two paychecks directly from the Massachusetts-based company.
During his tenure at CMOS and Crane, Jordan worked on various projects involving single-layer moire magnifier systems; one version of this technology—the “Gregison”—was even named after him. In connection with this employment, Jordan worked closely with Massachusetts-based Crane employees and would on occasion travel to this state. Of particular significance to the issue before the Court is the affidavit of Jeffrey Royal, a technologist for a Crane subsidiary located in Dalton, Massachusetts. Royal states that he and his co-workers worked closely with Jordan from December 2009 to May 2013 on many projects that involved highly sensitive, proprietary and confidential information regarding Crane’s currency security technologies. This collaboration included communications between Jordan and Massachusetts-based employees via e-mail, telephone and on occasion in face-to-face meetings in Massachusetts. Attached to Royal’s affidavit as exhibits are eighty e-mails between Jordan and Massachusetts-based Crane employees that contain what appears to be highly technical information related to the research and development of Crane’s anti-counterfeiting technology and products.
On June 13, 2013, ten days after he left Crane, Jordan filed United States Provisional Patent Application No. 71/836,762, entitled “Moire Magnification Systems,” with the U.S. Patent and Trademark Office (762 Provisional). Crane alleges that the 762 Provisional describes inventions by Jordan that are derived from and/or reflect confidential information that he learned or developed during the course of his employment with Crane. On June 13, 2014, Jordan filed United States Non-Provisional Application No. 14/304,330 (330 Application) claiming priority to the 762 Provisional. Crane contends that the patent application discloses the construction of a moire magnification system in violation of the confidentiality agreement Jordan previously signed with CMOS. The patent application identifies Jordan as the sole inventor and the application is assigned to Ad Lucem.
DISCUSSION
This Court has personal jurisdiction over a nonresident defendant if the assertion of jurisdiction is: 1) authorized by the Massachusetts Longarm Statute, G.L.c. 233A; and 2) is consistent with due process. Good Hope Industries Inc. v. Ryder Scott, Co., 378 Mass. 1, 5-6 (1979). Since the Longarm Statute functions as “ ‘an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States,’ the two questions tend to converge.” Id., quoting Automatic Sprinkler Corp., of America v. Seneca Foods Corp., 361 Mass. 441, 443 (1972). It is the plaintiffs burden to establish personal jurisdiction once it is challenged. Bull Dog Investors Gen. Partnership v. Secretary of the Commonwealth, 457 Mass. 210, 219 (2010). Plaintiff in the instant case asserts that jurisdiction exists under both subsections 3(a) and 3(d) of the Longarm Statute. This Court concludes that it has personal jurisdiction under subsection 3(a) and that this assertion is constitutional.
In order for jurisdiction to exist under Section 3(a), the facts must satisfy two requirements: (1) the defendant must have transacted business in Massachusetts; and (2) the plaintiffs claim must have arisen from the transaction of business by the defendant. Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994). The “transacting any business” clause in G.L.c. 223A, §3(a) has been construed broadly. Id. It applies to any purposeful act of the defendant, whether personal private, or commercial, and has been described as “easy to satisfy.” Saturn Management, LLC v. Gem-Atreus Advisors, LLC, 754 F.Sup.2d 272, 277 (D.Mass. 2010).
The defendants contend that this requirement has not been met because Jordan has had little contact with Massachusetts, and worked exclusively in Georgia. Jordan, a Georgia resident, was employed first for Nanoventions, headquartered in Georgia. After the transaction whereby Visual Physics acquired Nanoventions, he continued to work out of the same Georgia office. Jordan formed Ad Lucem, a Georgia corporation, in July 6, 2007 as part of his consulting business. Through Ad Lucem, Jordan performed consulting work for Crane, but he points out that this was on only two occasions and did not entail travel to Massachusetts. Jordan worked directly for Crane (the Massachusetts-based parent company) for only one month—between May and June 2013. Finally, defendants point out that the nondisclosure agreement that he signed is governed by Georgia law and was originally executed in Georgia between Jordan and Nanoventions. Thus, to the extent that this case arises from that agreement, they maintain that the action is Georgia-based.
*553 The defendants’ argument, however, does not adequately account for the numerous communications between Jordan and Massachusetts-based Crane employees. Plaintiff has presented evidence indicating that Jordan was in contact—via email, telephone and sometimes in face-to-face meetings—with engineers and research technologists in Crane’s Massachusetts offices and with Crane’s Legal Department here. These contacts were not sporadic or isolated. As to the nature of the contacts, the communications themselves were of a highly technical nature and appear to involve Jordan’s work in developing micro-optic technologies used in anti-counterfeiting products. The communications occurred during a four-year time period when (according to Royal) Jordan was collaborating with Royal and others based in Dalton, Massachusetts on projects that involved highly sensitive proprietary and confidential information. Among them was a project that involved principles of moire magnification—the subj ect of the patent application that J ordan filed after he left Crane that precipitated this legal action.
In response, the defendants maintain that Jordan’s primary work in anti-counterfeiting technologies was done in Georgia with Georgia-based employees of Visual Physics, and that the contact with Crane employees in Massachusetts was limited to assisting in the implementation or investigation of technologies to be used in “down-the-line” products. That these Massachusetts employees did not themselves work in the field of micro-optics (as Jordan asserts in his affidavit) is beside the point, however, so long as Jordan was required by virtue of his employment relationship, to work together with them in developing Crane products using this technology. Moreover, in determining whether an individual has transacted business for purposes of personal jurisdiction, courts focus less on the specific content of the communications and more on their frequency and purposefulness. Ross v. Ross, 371 Mass. 439, 441 (1976) (‘The statute’s reference to ‘transacting any business’ is general and applies to any purposeful acts by an individual, whether personal, private, or commercial”). Clearly, these contacts were purposeful, and not few in number.
It is true that the cause of action must have “arisen from” these contacts, but this statutory language is also general and broadly construed: it is satisfied if the claim was “made possible by or lies in the wake of the transaction of business in the forum state.” Tatro, 416 Mass, at 771. The communications with Massachusetts-based Crane employees was focused on the research that Jordan was doing, and it was by virtue of his research position that Jordan was able (according to the plaintiff) to acquire and develop the information that was the subject of the patent application. That the Crane employees in Massachusetts were of only limited assistance to him in this work and that the communications did not directly bear on the technology that is the subject of the patent application does not change this Court’s conclusion that this action “arose from” Jordan’s contacts with this state and those contacts are sufficient to permit the assertion of personal jurisdiction.
To the extent that this case arises from Jordan’s employment relationship, the defendants also point out that Jordan was not directly employed by the Massachusetts-based Crane Corporation until one month before he left the company. Before that, he worked for Visual Physics and Nanoventions, both Georgia companies. But Visual Physics was wholly owned by CMOS, which was in turn wholly owned by Crane. In 2011, Jordan acknowledged receiving a CMOS employee handbook which addressed his obligations as a CMOS employee. He used a CMOS address (greg.jordan@craneoptics.com) as his business email. He had to have known that he was part of a larger organization, at the top of which was the Massachusetts-based parent, Crane, and that his work would necessarily require contacts with Crane and its other Crane subsidiaries based in Massachusetts. That is indeed what occurred. To focus exclusively on the corporate niceties without regard to these Massachusetts connections would place form over substance. Indeed, that Jordan was employed directly by Crane, if only for a month, is not itself insignificant.
If this Court has jurisdiction over Jordan personally, it necessarily follows that it also has jurisdiction over the co-defendant Ad Lucem. As the defendants concede, Ad Lucem is a “one-man” company, with Jordan as its sole employee and its registered agent. For purposes of personal jurisdiction, the actions of an agent (here J ordan) may be imputed to the principal (here Ad Lucem). This is particularly true given that the patent application at issue in this case was assigned by Jordan to Ad Lucem, which stands to benefit from any wrongful conduct by Jordan that plaintiff is able to prove.
As to defendants’ alternative position that this Court in the exercise of its discretion should dismiss the case on grounds of forum non conveniens, this requires little discussion. Here, the defendants—not the plaintiffs—bear the burden. That is because there is a strong presumption in favor of plaintiffs forum choice, a choice which should be disturbed only where the defendant demonstrates “the likelihood of serious unfairness to the parties in the absence of a transfer to the alternative forum.” Foster-Miller, Inc. v. Babcock & Wilcox Canada, 975 F.Sup. 30 (D.Mass. 1997), quoting Mercier v. Sheraton Intern, Inc., 981 F.2d 1245, 1349 (1st Cir. 1992). Inconvenience to the defendant is not enough. Nowak v. Tak How Investments Ltd., 94 F.3d 708, 718 (1st Cir. 1996). Indeed, as the Supreme Court has noted, the plaintiff should not be deprived of litigating its dispute in its home forum “except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiffs convenience ... or *554 (2), make trial in the chosen forum inappropriate because of considerations affecting the court’s administrative or legal problems.” Koster v. Lumbermen’s Mut. Co., 330, U.S. 518, 524 (1946). Certainly, this Court has no issues of its own in trying this case. And defendants have fallen well short of demonstrating that remaining in Massachusetts would be oppressive.
CONCLUSION AND ORDER
For all of the foregoing reasons and for other reasons articulated in plaintiffs Memorandum in Opposition, the Defendants’ Motion to Dismiss is DENIED.