NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-999

ROBERT SARVIS

vs.

LESLIE M. BASSETT & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Robert Sarvis, the plaintiff-appellant, filed a complaint in the Superior Court seeking damages for breach of contract, promissory estoppel, quantum meruit, and violations of G. L. c. 93A.  A judge dismissed the complaint for lack of personal jurisdiction over the defendants, Leslie Bassett and Pridgen Bassett Law, LLC (PB Law).  On appeal, Sarvis argues that the clerk should have entered a default pursuant to Mass. R. Civ. P. 55 (a), 365 Mass. 822 (1974).  He further argues that the judge should not have dismissed the complaint for lack of personal jurisdiction.  We affirm.

---

[1] Pridgen Bassett Law, LLC.

Background.  The following facts are viewed in the light most favorable to Sarvis.  See Tatro v. Manor Care, Inc., 416 Mass. 763, 765 (1994).[2]  Sarvis is a business consultant specializing in administrative procedures under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq.  He resides and operates his business in Massachusetts.  Sarvis began representing employees of a paper mill located in Brattleboro, Vermont, and headquartered in Georgia in an ERISA action.  Because any legal action against the paper mill was to be initiated in Georgia, in 2020 Sarvis contacted PB Law, a Georgia law firm[3] consisting of Bassett and another attorney, Nancy Pridgen, to provide representation to the employees.  The parties did not reduce their agreement to writing.  On behalf of the employees, the defendants filed a class action complaint in a United States District Court in Georgia for unpaid severance pay and filed a separate action in State court in Georgia for unpaid vacation pay.  Per their

---

[2] We take as true the facts set forth in the complaint, in Sarvis's affidavits that bear on the motion to dismiss, and in his statements made at the hearing on the motion.  See Kleinerman v. Morse, 26 Mass. App. Ct. 819, 821 (1989).

[3] PB Law is incorporated in Georgia and has its principal place of business in Georgia.

verbal agreement,[4] Sarvis conducted legal research and drafted complaints from his workplace in Nantucket, and the defendants reviewed, approved, and filed the papers in the Federal court in Georgia and in the Fulton County Superior Court.

Sarvis alleges he and Bassett agreed that Bassett would fully prosecute the class actions through completion but that on November 10, 2021, Bassett withdrew from both Federal and State actions without proper notice to him.  Sarvis filed a complaint in the Superior Court on December 19, 2022, seeking $65,000 in damages as compensation for the work he completed and the expenses he incurred after the defendants' withdrawal.  The defendants were served in hand on January 11, 2023.  The defendants' deadline to serve a motion to dismiss was January 31, 2023.  See Mass. R. Civ. P. 12 (a) (1), 365 Mass. 754 (1974).

On February 10, 2023, an attorney filed both a special appearance on behalf of the defendants and a motion to dismiss.[5]

---

[4] Sarvis did not present evidence establishing the circumstances under which the parties came to their verbal agreement.

[5] The motion was filed a second time with the Superior Court as part of a package, pursuant to Rule 9A of the Rules of the Superior Court (2018), that included the motion, a memorandum of law, an affidavit by Basset, and Sarvis's opposition.  Sarvis states in an affidavit that the papers are identical to what Bassett had filed on January 31, 2023.  The docket does not reflect that Bassett filed any papers on January 31, 2023.

On February 13, 2023, the Superior Court received Sarvis's motion for default judgment, which he had signed and mailed on February 7, 2023. In light of the pendency of the motion to dismiss, the clerk returned Sarvis's motion for default judgment. In March 2023, Sarvis also filed a motion to strike and a renewed motion for default judgment, which the judge denied.

Discussion. 1. Default. Sarvis argues that the clerk was required to enter a default under Mass. R. Civ. P. 55 (a), which provides for entry of default against a party who has "failed to plead or otherwise defend." See Padmanabhan v. Executive Director of the Bd. of Registration in Medicine, 491 Mass. 1031, 1032 (2023) ("entry of default under rule 55 [a] is a 'formal, ministerial act of the clerk' that does not require judicial authorization" [citation omitted]).[6] This argument founders because, at the time Sarvis's motion was received and docketed on February 13, 2023, the defendants had filed a special appearance and motion to dismiss three days earlier. Thus, rule 55 (a)'s condition that the defendants had failed to plead or otherwise defend the matter was not satisfied at the time the

_____

[6] The rule provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default." Mass. R. Civ. P. 55 (a).

4

clerk received Sarvis's motion.[7]  For the same reasons, we discern no abuse of discretion in the order denying the plaintiff's motion to strike.  See Eagle Fund, Ltd. v. Sarkans, 63 Mass. App. Ct. 79, 85 (2005) (committing case management issues such as default to discretion of judge).

2.  Personal jurisdiction.  We next address the question of personal jurisdiction.[8]  Because jurisdictional questions are questions of law, we review them de novo.  See Doucet v. FCA US LLC, 492 Mass. 204, 207 (2023).  "For a nonresident to be subject to the authority of a Massachusetts court, the exercise

---

[7] Sarvis's argument that the clerk automatically should have entered a default as soon as January 31, 2023, passed is incorrect.  Motions to dismiss are served on the other parties and not necessarily filed with the court on the deadline. See Superior Court Rule 9A.  Accordingly, the passage of the deadline for a defendant to respond to the complaint pursuant to Mass. R. Civ. P. 12 (a) (1) does not inherently alert the clerk that a defendant defaulted, because the defendant may have served the motion pursuant to Superior Court Rule 9A.  In any event, had a default entered, the motion judge could have set aside a default for good cause shown.  See Mass. R. Civ. P. 55 (c), 365 Mass. 822 (1974).  Absent prejudice and unreasonable conduct or delay, the law strongly favors adjudication on the merits.  See Monahan v. Washburn, 400 Mass. 126, 128-129 (1987).

[8] We reject Sarvis's argument that the defendants have waived this defense because they did not file the motion to dismiss within twenty days of being served with the complaint. See Aronovitz v. Fafard, 78 Mass. App. Ct. 1, 8 (2010) ("Affirmative defenses are waived when they are not raised in the first responsive pleading").  The defendants filed the motion to dismiss based on personal jurisdiction before a default entered and three days before Sarvis moved for default judgment.  Moreover, Sarvis was aware that Bassett was "otherwise defend[ing]" based on her attempt to file a special appearance on January 31, 2023.

5

of jurisdiction must satisfy both Massachusetts's long-arm statute, G. L. c. 223A, § 3, and the requirements of the due process clause of the Fourteenth Amendment [to the United States Constitution]."  Id., quoting Exxon Mobil Corp. v. Attorney Gen., 479 Mass. 312, 314 (2018), cert. denied, 586 U.S. 1069 (2019).  Sarvis "has the burden of establishing the facts upon which the question of personal jurisdiction over [the defendants] is to be determined."  Exxon Mobil Corp., 479 Mass. at 314, quoting Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151 (1978).

a.  Long-arm statute.  Under G. L. c. 223A, § 3 (a), a court may exercise personal jurisdiction over a person "transacting any business" in Massachusetts.  "To meet this criterion, a plaintiff must allege facts that 'satisfy two requirements -- the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant.'"  Doucet, 492 Mass. at 207, quoting Tatro, 416 Mass. at 767.

To determine whether a defendant "transacted business" in Massachusetts, a defendant's "purposeful and successful solicitation of business" from Massachusetts residents will generally suffice.  Doucet, 492 Mass. at 208, quoting Tatro, 416 Mass. at 767.  However, "an isolated (and minor) transaction

with a Massachusetts resident" is insufficient.  Doucet, supra, quoting Tatro, supra.

Here, the defendants did not "transact business" in Massachusetts.  Not only do the defendants have no offices in Massachusetts, but none of PB Law's employees work in or are licensed to practice in Massachusetts.  See Fletcher Fixed Income Alpha Fund, Ltd. v. Grant Thornton LLP, 89 Mass. App. Ct. 718, 723 (2016) (G. L. c. 223A, § 3 [a], was not satisfied even where defendant was registered to do business in Massachusetts and had more than 175 employees there).  Additionally, the defendants had no "preexisting and ongoing" business relationships in Massachusetts.  See Doucet, 492 Mass. at 208 (§ 3 [a] was satisfied where defendant had "preexisting and ongoing business agreements" in Massachusetts).  Although the defendants have a website, they do not specifically advertise their services to Massachusetts residents.  See Roberts v. Legendary Marine Sales, 447 Mass. 860, 860-861 (2006) (§ 3 [a] was not satisfied where defendant's website advertisements were not "specifically aimed at Massachusetts").

Furthermore, the parties' relationship was not initiated by the defendants.  Instead, Sarvis solicited business from the defendants.  See Doucet, 492 Mass. at 208.  Although the parties exchanged phone calls and e-mails, Sarvis did not present evidence establishing the extent of those communications and who

7

initiated them.  Additionally, at no point did the defendants travel to Massachusetts for the matter.  See von Schönau-Riedweg v. Rothschild Bank AG, 95 Mass. App. Ct. 471, 489 (2019) (visiting Massachusetts multiple times on research missions for client constituted "transacting business" under G. L. c. 223A, § 3 [a]).  Instead, all the defendants' services took place in Georgia involving litigation in Georgia for clients in Vermont.

Sarvis, relying on Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1 (1979), argues that the defendants "transact[ed] business" in Massachusetts because they knew they were "contracting" with a Massachusetts resident.  Sarvis, however, oversimplifies the Good Hope case, which was based on a "factual constellation."  Id. at 6.

The court in Good Hope concluded that the defendant transacted business in Massachusetts not only because it entered into a business relationship with a party known to be in Massachusetts, but also because the defendant initiated over fifty telephone calls to the plaintiff in Massachusetts, sent monthly invoices and periodic appraisal reports to the plaintiff in Massachusetts, and regularly accepted check payments from the plaintiff's Massachusetts bank account over a period of seventeen months.  See Good Hope, 378 Mass. at 6, 9-10.  As discussed, Sarvis did not present evidence of the frequency of the phone calls and e-mails between the parties or who initiated

8

them.  Furthermore, Sarvis has not demonstrated the circumstances by which the parties' verbal agreement was formed. Sarvis sent three wire transfers from his Massachusetts bank account to the defendants upon receipt of their e-mailed invoices.  These circumstances are not an "enterprise of substantial dimension and duration" engaged in by the Good Hope defendants.  Id. at 9.

On the record before us, the defendants' interactions with Sarvis appear to be nothing more than "incidental" and "minor" and directed at another State, Georgia.  See Tatro, 416 Mass. at 767.  Accordingly, Sarvis failed to demonstrate that G. L. c. 223A, § 3 (a), was satisfied.

b.  Due process.  Even if G. L. c. 223A, § 3 (a), was satisfied, Sarvis has failed to show that the requirements of the due process clause were met.[9]  See Exxon Mobil, 479 Mass. at 314.  "The primary focus of the Federal personal jurisdiction inquiry is the defendant's relationship to the forum State" (quotations omitted).  Doucet, 492 Mass. at 210, quoting Bristol-Myers Squibb Co. v. Superior Court of Cal., 582 U.S.

_____

[9] This case concerns specific jurisdiction, as Sarvis does not assert that the defendants are subject to general jurisdiction, which requires contacts "so constant and pervasive as to render [the out-of-State entity] essentially at home in the forum State" (quotation omitted).  Daimler AG v. Bauman, 571 U.S. 117, 122 (2014), quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).

9

255, 262 (2017). "This long-standing constitutional requirement for personal jurisdiction depends on the defendant's having such contacts with the forum State that the maintenance of the suit is reasonable, in the context of our [F]ederal system of government, and does not offend traditional notions of fair play and substantial justice" (quotations omitted). Doucet, supra, quoting Ford Motor Co. v. Montana Eighth Judicial Dist. Court, 592 U.S. 351, 358 (2021).

To prove the requisite contacts, the plaintiff must demonstrate that the defendants have "purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" (quotation omitted). Doucet, 492 Mass. at 211, quoting Knox v. MetalForming, Inc., 914 F.3d 685, 691 (1st Cir. 2019). "This requirement ensures that the exercise of jurisdiction is essentially voluntary and foreseeable, and is not premised on a defendant's random, fortuitous, or attenuated contacts" (quotation omitted). Doucet, supra, quoting Knox, 914 F.3d at 691.

Additionally, "the defendant's suit-related conduct must create a substantial connection with the forum State." Walden v. Fiore, 571 U.S. 277, 284 (2014). Importantly, the defendant's relationship to the forum State must arise out of contacts that the "defendant himself creates" (quotation and

10

emphasis omitted).  Id.  Furthermore, those contacts must be "with the forum State itself, not . . . with persons who reside there."  Id. at 285.

Sarvis heavily relies on Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), to argue that the defendants, by entering into a "contract" with a Massachusetts resident, purposefully availed themselves of Massachusetts.  The Burger King case involved a franchise agreement between the defendant franchisee in Michigan, and the plaintiff corporation, Burger King, headquartered in Florida.  See id. at 466, 468.  The Court in Burger King held that the defendant purposefully availed himself of Florida where he applied for a franchise with Burger King, engaged in negotiations for months with Burger King's Michigan office and Florida headquarters, entered into a twenty-year franchise agreement obligating him to payments of over $1 million and "exacting regulation" of his business from Florida headquarters, and agreed that Florida law would govern in the event of a dispute.  Id. at 466-467, 479-480, 482.

The circumstances here are distinguishable from those in Burger King.  First, Sarvis is the one who "[reached] out beyond" Massachusetts to solicit the defendants in Georgia to provide representation in Georgia.  See Burger King, 471 U.S. at 479-480, quoting Travelers Health Ass'n v. Virginia, 339 U.S. 643, 647 (1950).  Additionally, Sarvis did not present evidence

11

establishing how extensively or frequently the parties communicated with one another, or who initiated those communications.. Sarvis did not establish all of the terms of the parties' verbal agreement. Assuming the parties formed a contract, this alone would be insufficient to show that the defendants "purposefully availed" themselves of Massachusetts. See Burger King, supra at 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot" [emphasis omitted]).

Moreover, the defendants' contacts appear to be with Sarvis, not Massachusetts itself. See Walden, 571 U.S. at 285. As discussed, the defendants' offices and employees are in Georgia, not Massachusetts. The defendants do not advertise their services to Massachusetts residents. The defendants' services all took place in Georgia, concerning litigation in Georgia for a client in Vermont representing a class of others who reside in Vermont. At no point did the defendants travel to Massachusetts for the matter. Although the defendants communicated with Sarvis while he was in Massachusetts, his location was not relevant. Accordingly, Sarvis has failed to

12

demonstrate that the defendants "purposefully availed" themselves of Massachusetts.[10]

Judgment affirmed.

By the Court (Henry,
Hershfang & Smyth, JJ.[11]),

Clerk

Entered:  November 4, 2024.

---

[10] The defendants' request for attorney's fees is denied.

[11] The panelists are listed in order of seniority.

13